# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DIANE J. DAVIS,

                             Plaintiff,

      v.                                         3:13-CV-693
                                                   (LEK/ATB)

JULIE CAMPBELL, et al.,

                             Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DIANE J. DAVIS
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a civil rights complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Diane J. Davis. (Dkt. Nos. 1, 2).

**I.    IFP Application**

A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

In this civil rights complaint, plaintiff is challenging proceedings that occurred in the Chenango County Family Court in 2011 and 2012, relative to the custody of her

grandson and relative to a neglect petition that was filed against her. (Compl.) (Dkt. No. 1). Plaintiff alleges that she had custody of the child for seven years (2005-2012), during which time the child's father was serving a criminal sentence for sexual abuse. (Compl. ¶ 6). Plaintiff claims that when the child's father was released from custody, he attempted to reestablish contact with the child, however, the child reported that his father had molested him during visitation. (Compl. ¶¶ 8-10)

Notwithstanding these allegations, the father filed a custody petition in the Chenango County Family Court to obtain custody of the child from plaintiff. At the same time, plaintiff filed cross-petitions to modify the father's visitation rights because of the alleged abuse. (Compl. ¶ 11-12). Plaintiff alleges that her first assigned attorney requested that the Family Court relieve him because "the child's father made many custody petitions," and the attorney would not be able to represent plaintiff properly. (Compl. ¶¶ 13-14). Defendant Campbell, the Family Court Judge, assigned Andrew Puritz, Esq., who plaintiff alleges "had no time for Plaintiff whatsoever." (Compl. ¶ 15).

Plaintiff claims that the child's school reported the child's allegations of sexual abuse to the Chenango County Child Protective Service ("CPS"). (Compl. ¶ 16). Plaintiff also states that she "would file new petitions as new allegations came in," but that after plaintiff had filed three petitions in an eight-month period, defendant Campbell issued an order prohibiting plaintiff from filing petitions on her own and directing that any petition be filed by her attorney, Mr. Puritz. (Compl. ¶¶ 17-18). However, plaintiff claims that Mr. Puritz refused "several times" to file petitions on

3

plaintiff's behalf. (Compl. ¶ 19). Plaintiff claims that by forbidding her from filing "new" petitions pro se, and requiring her to proceed with counsel, without giving plaintiff an opportunity to be heard, defendant Campbell was violating plaintiff's federal constitutional rights.

Plaintiff alleges that she continued to report the child's allegations of sexual abuse to the Child Abuse Hotline. (Compl. ¶ 25). Plaintiff claims that one of the CPS workers failed to properly report the allegations, and in July of 2011, plaintiff reported the CPS worker to the "hotline." Plaintiff claims that the individual on the telephone "got really mad" and told plaintiff that she would be hearing from the CPS worker in question "within the hour." (Compl. ¶¶ 26-27). The CPS worker called plaintiff and made arrangements to meet at the "victim's advocate's office," but told plaintiff that Mr. Puritz would not "do anything for her." Plaintiff also claims that, in retaliation for reporting the CPS worker, she filed a neglect petition against plaintiff. (Compl. ¶¶ 29-30).

Plaintiff claims that as a result of the neglect petition, defendant Campbell "took" the child from plaintiff's custody without notice or hearing, and placed the child with his father, "a convicted level III child molester, without any precautions against the continuing sexual abuse reported by the child." (Compl. ¶ 31).

Attorney Puritz was assigned to represent plaintiff on the neglect case, but plaintiff claims that Attorney Puritz never filed a petition to have the child returned to plaintiff or even told plaintiff that such a procedure was available. (Compl. ¶ 32). Plaintiff alleges that Attorney Puritz did not represent her properly and consistently

4

ignored her telephone calls and letters. Attorney Puritz told plaintiff that he knew that the child was going to be taken, but never informed plaintiff. (Compl. ¶ 34). Plaintiff states that there was a "court hearing," but plaintiff never received notice from the court. (Compl. ¶ 35). Instead, the notice went to Mr. Puritz, and he failed to notify plaintiff. Attorney Puritz appeared for the hearing, but did not request an adjournment so that plaintiff could get notice and an opportunity to be heard. (Compl. ¶ 36).

Plaintiff claims that the CPS drove to plaintiff's house 15 minutes before the removal hearing[1] was to start, to notify plaintiff of the hearing. Plaintiff was not home and states that her twin sister did not accept service "because notice was insufficient." (Compl. ¶¶ 37-40). Plaintiff states that she made multiple applications for another attorney "because Mr. Puritz did not want to do his job." (Compl. ¶ 41).

Plaintiff alleges that when she managed to get Mr. Puritz on the telephone, he told her that he had 70 cases along with plaintiff's neglect case, he had to take care of his "paying clients" first, and he had no time for her case. (Compl. ¶¶ 43-45). Plaintiff states that she reported this conversation to the Clerk of the Family Court and to the "Public Defender's Office." Plaintiff claims that the Public Defender's Office took plaintiff's application for new counsel, but defendant Campbell refused to appoint a new attorney without an explanation. (Compl. ¶¶ 46-47). Plaintiff "believes" that the refusal to appoint new counsel, knowing that the assigned attorney refused to do his

---

[1] Plaintiff occasionally includes dates in her complaint. However, it is difficult to determine what hearing plaintiff is discussing. She states in ¶ 35 that after the child was taken there was "also a court hearing" of which she never received notice. However, in ¶ 37, she discusses a "removal hearing" of which she was improperly "notified" by CPS driving to plaintiff's house 15 minutes prior to the hearing. It is unclear whether these are the same, or two separate hearings.

5

job, was an unconstitutional "policy" of the Family Court. (Compl. ¶ 48-49).

Plaintiff states that during the pendency of the child neglect proceedings against plaintiff, the child's father filed a custody petition to have custody returned to him. The neglect petition against the plaintiff and the custody petition filed by the child's father were scheduled to be heard together. Trial for both petitions was scheduled for January 23, 2012. (Compl. ¶¶ 50-51).

The complaint states that at the end of December "2012,"[2] she became "fed up" with Mr. Puritz's refusal to work, and with the assistance of her "extended family," collected enough money for a retainer and hired private counsel.[3] (Compl. ¶ 52). Plaintiff alleges that her new attorney immediately began working and filed the notarized "consent to change attorneys." (Compl. ¶ 53). Counsel served the document on Mr. Puritz, but he did not transfer plaintiff's file for two weeks, notwithstanding the impending trial date. (*Id.*)

Plaintiff's new counsel continued to act on plaintiff's behalf in Family Court and filed witness lists for the trial. The attorney also filed an ex parte application for the funds, necessary to subpoena factual witnesses and to call expert witnesses. (Compl. ¶¶ 54-55). Counsel also filed an application to adjourn the trial. (Compl. ¶ 55). At the same time, the child's father filed a motion to disqualify plaintiff's retained counsel because counsel's husband represented the child's father in the criminal case that resulted in his conviction. (Compl. ¶ 56). Notwithstanding

---

[2] Plaintiff may mean December of 2011 because the trial date was January 2012. (Compl. ¶ 51).

[3] Plaintiff does not include her retained attorney's name in the complaint.

6

plaintiff's opposition to the disqualification, defendant Campbell granted the motion, and on January 18, 2012, reinstated Attorney Puritz as counsel for plaintiff, without plaintiff's consent. (Compl. ¶¶ 57-61).

Plaintiff claims that defendant Campbell forced her to proceed to trial with unprepared counsel, who had an "obvious grudge" against plaintiff for firing him. (Compl. ¶ 67). Attorney Puritz did not represent her properly and did not have her best interests in mind when he handled her three-week trial. (Compl. ¶ 65, 69). Specifically, plaintiff alleges that Attorney Puritz did not make proper objections, and "in fact, . . . made no hearsay objections," refused to call all of plaintiff's desired witnesses, and he allowed CPS to introduce records that were sealed and inadmissible. (Compl. ¶¶ 70-73). Defendant Campbell even offered to help Attorney Puritz subpoena witnesses, although she had not given the same assistance to retained counsel. (Compl. ¶ 72).

The custody and neglect petitions were decided against plaintiff, and all her visitation with the child was terminated. (Compl. ¶¶ 74-75). Plaintiff states that she appealed to defendant Peters's court (the Appellate Division, Third Department) and "initially" proceeded pro se on the appeal. (Compl. ¶ 75). Plaintiff claims that defendant Campbell refused to give plaintiff access to her file for the appeal, claiming "a policy" that only attorneys could look at the file and telling plaintiff she should hire an attorney or ask for assigned counsel. (Compl. ¶ 76).

Plaintiff states that she was nervous that her appeal would be dismissed as untimely, so she asked the Appellate Division for assigned counsel. (Compl. ¶ 77).

7

The first attorney assigned by the Appellate Division had a conflict, and a second attorney, Sam D. Castellino, was appointed. (Compl. ¶ 80). Plaintiff was unhappy with Mr. Castellino's performance. (Compl. ¶¶ 82-91). Plaintiff did not share Mr. Castellino's view that plaintiff should "work with" Social Services and claims that Mr. Castellino refused to seek relevant records and exhibits. (Compl. ¶¶ 82, 86-88). Plaintiff alleges that, although Mr. Castellino asked for reversal of Judge Campbell's decision, he also suggested that plaintiff be placed under CPS supervision, a proposal with which plaintiff strongly disagreed. (Compl. ¶ 89). Mr. Castellino also refused to raise issues of judicial bias, prejudice, misconduct, and ineffective representation at trial. (Compl. ¶ 90).

Plaintiff ultimately asked Mr. Castellino to withdraw, and he did so. (Compl. ¶ 91). Plaintiff was appointed another attorney, Ms. Corbett. (Compl. ¶ 92). However, plaintiff became displeased with Ms. Corbett's performance when Ms. Corbett decided to use Mr. Castellino's appellate brief, rather than write her own, knowing that Mr. Castellino's brief contained the offer to have plaintiff supervised by CPS. (Compl. ¶¶ 93-94). Ms. Corbett also told plaintiff that Mr. Castellino was a friend of hers, that he did a "fabulous job" on the appeal, and that Mr. Puritz did an "excellent" job as plaintiff's trial counsel. She suggested that plaintiff go to counseling for six months and then reapply for visitation with the child. (Compl. ¶ 95).

Plaintiff states that she also learned that there was a "cap" on attorneys fees in the Appellate Division, and that with the rate of $ 75.00 per hour, an attorney can only

afford to spend 62 hours and 40 minutes working on a file, even if the case required much more. Plaintiff states that she was never given access to her file so that she could assess the magnitude of her own record. Plaintiff seeks to challenge the "cap rule" of the Appellate Division on "the grounds of equal protection and access to courts." (Compl. ¶¶ 97-104).

Plaintiff states that, from her conversations with "several attorneys," she believes that attorneys are "deadly afraid" to raise issues of judicial bias, prejudice, and misconduct. (Compl. ¶ 105). Because of this fear, plaintiff believes that her right to raise relevant issues has been prejudiced, and she states that she has "reversible issues" on appeal based on defendant Campbell's bias. (Compl. ¶ 106). Plaintiff complains that defendant Peters's court consistently assigns counsel who are "related to the Respondent" or who would not work for her "fully" because of restrictions in compensation or fear of sanctions. (Compl. ¶ 107).

Plaintiff asks for declaratory and injunctive relief:

(1)  declare unconstitutional the "rule or policy" of the Chenango Family Court prohibiting pro se appellants access to their own file;

(2)  declare unconstitutional the "rule or policy" of the Chenango County Family Court forbidding the filing of new petitions by pro se litigants who are represented by assigned counsel in pending proceedings;

(3)  declare unconstitutional the "rule or policy" of the Chenengo County Family Court to "impose" assigned counsel who "refuse" to do their work properly on indigent litigants; and

(4)  declare unconstitutional the "rule or policy" of the Appellate Division to cap compensation of assigned counsel.

(Compl. at pp.12-13). For each of the above requests, plaintiff asks the court to enjoin

9

the enforcement of the policy and to appoint a federal court monitor to "verify" compliance. (*Id.*)

## III. <u>Abstention</u>

### A. **Legal Standards**

Pursuant to *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), the District Court is without jurisdiction under the abstention doctrine if there is an ongoing state proceeding; where an important state interest is implicated; and the plaintiff has an avenue open for review of constitutional claims in state court. *See Parent v. New York*, 485 F. App'x 500, 503 (2d Cir. 2012) (quoting *Younger, supra*; *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997)). The *Younger* doctrine originally applied only to criminal proceedings, but is now applicable to civil actions as well, including state administrative proceedings. *Id.* (citations omitted). The doctrine also applies to claims for declaratory and injunctive relief. *Id.*

### B. **Application**

Plaintiff states in her complaint that appellate counsel was given until June 7, 2013 to decide whether to use former counsel's brief on appeal or to submit her own brief. (Compl. ¶¶ 92-94). Based on a deadline of June 7, 2013 for determining whether to file a brief or use Mr. Castellino's brief, it appears that plaintiff's state court appeal is still pending in the Appellate Division. Thus, there is an ongoing state court proceeding, and the first criterion in the abstention analysis is met.

With respect to the second factor, it has been held that the "resolution of domestic matters has been recognized as an important state interest." *Parent*, 485 F.

App'x at 503-504 (citing *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) ("'[T]he whole subject of the domestic relations of husband and wife, parent and child belongs to the laws of the States and not to the laws of the United States.'")). The case also involves matters challenging the constitutionality of judges' actions. It has been held that "few interests can be considered more central than a state's interest in regulating its own judicial system." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (citing *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 848 (1978)). Because this case involves custody matters, domestic relations, and the conduct of state court judges in the course of exercising their jurisdictions, the case falls within the area of important state interest. Thus, the second factor also weighs in favor of abstention.

Finally, plaintiff has failed to show that there is no avenue for any constitutional claims in state court. Plaintiff must demonstrate that state law bars the effective consideration of her constitutional claims. *Spargo*, 351 F.3d at 78. The relevant question is whether the state's procedural remedies could provide the relief sought, not whether they *will* provide the constitutional ruling that plaintiff seeks. *Id.* at 79. Simply because a state court has not ruled in plaintiff's favor does not render the remedy inadequate for purposes of the abstention doctrine. *Parent*, 485 F. App'x at 504.

Although plaintiff in this case complains bitterly about her various assigned attorneys, she has named as defendants only the Family Court judge assigned to her case and the Chief Judge of the Appellate Division. She claims that she has been told

11

that attorneys will not raise issues of judicial bias or misconduct. The first three of four claims for relief involve only the alleged "policy" of the Family Court. (Compl. at 12). To the extent that plaintiff alleges that the Family Court judge engaged in some sort of misconduct, the State of New York provides a mechanism to file complaints against state court judges. *See* N.Y. Jud. Law §§ 41-47. New York has created the State Commission on Judicial Conduct to review complaints against judges, relating to the conduct, qualifications, fitness to perform, or the performance of official duties of *any judge*. *Id.* § 41(1). The governing statute is accompanied by specific regulations. N.Y. Code Comp. Code & Regs., tit. 22, § 100.2. These provisions are also reflected in the New York State Constitution, with review of the Commission's decisions in the New York Court of Appeals. N.Y. Const., Art. 6, § 22(d).

Thus, plaintiff could raise whatever misconduct claims she wishes under New York law and regulations. Where state remedies are available, the federal court should assume that state procedures will afford an adequate remedy, in the absence of "unambiguous authority" to the contrary. *Diamond "D" Construction Corp. v. McGowan*, 282 F.3d 191, 202 (2d Cir. 2002) (quoting *Pennzoil v. Texaco*, 481 U.S. 1, 15 (1987)). Plaintiff's conclusory claims of bad faith or retaliation are insufficient to establish that she cannot receive a full and fair adjudication in the state court. *See Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 710 n.27 (S.D.N.Y. 2011) (conclusory allegations will not overcome the presumption that plaintiff will receive a fair adjudication in state court).

Therefore, even assuming that the court had jurisdiction over plaintiff's claims,

the final abstention requirement weighs in favor of the court declining jurisdiction. Even if the court were not to abstain, dismissal would be appropriate.

## IV. Judicial Immunity

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

### B. Application

In this case, plaintiff has named two judges as the only defendants: the Family Court Judge assigned to her case and the Chief Judge of the Appellate Division, Third Department. Every action alleged to have been taken by either judge was in her judicial capacity and within her jurisdiction. The handling of plaintiff's file and the

appointment of counsel is well within their judicial functions. Neither of the exceptions to judicial immunity exist in this case. The Second Circuit has specifically held that a Family Court judge's determination of reasonable attorneys fees is a judicial act that is entitled to absolute immunity. *Bliven v. Hunt*, 579 F.3d 204, 212 (2d Cir. 2009).

Judicial immunity does not bar a claim for prospective injunctive relief against a judicial officer acting in her judicial capacity, *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). However, Congress has statutorily provided for such immunity by amending section 1983 to provide that in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983, as amended by Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104–317, 110 Stat. 3847, 3853 (1996).

In this case, plaintiff does not allege that any declaratory relief was unavailable in state court, and generally, declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order. *LeDuc v. Tilley*, No. 05–CV–157, 2005 WL 1475334, at *7 (D.Conn. June 22, 2005) (citing cases). Plaintiff has appealed the Family Court Judge's order, and that appeal appears to be pending.

The doctrine of judicial immunity also does not shield judges from claims for prospective declaratory relief." *LeDuc*, 2005 U.S. Dist. LEXIS 12416, at *18. In this case, plaintiff's request for declaratory relief is purely retrospective. She seeks a

14

declaratory judgment that past actions that occurred in the context of the Family Court proceedings violated her constitutional rights.[4] Although she states her requests for "relief" in future terms and refers to the judges' actions as "policies," essentially, in her first three claims, she is asking the court to invalidate the actions of the Family Court Judge.[5] Plaintiff's appeal of those orders and the ultimate custody decision is still pending. Thus, both judges are entitled to judicial immunity as to all claims.[6]

## V. Merits

### A. Fee "Cap"

The court must also note that plaintiff's fourth cause of action misstates the law that is the basis for her claim. Plaintiff asks the court to declare the "policy" of the Appellate Division to "cap compensation of assigned counsel at 62.7 hours of their work . . . ." (Compl. at 13). The fee cap is not defendants' "policy." It is a statutory provision. New York County Law § 722-b provides for the representation of persons accused of a crime or parties before the Family or Surrogates Court. Section 722-b(1)(b) provides that attorneys so appointed shall receive $75.00 per hour and reimbursement for expenses reasonably incurred. This includes trial, appellate and

---

[4] As stated above, plaintiff also asks that the court appoint a "federal court monitor" to verify compliance. (Compl. at 12-13).

[5] It is meritless to assert, *inter alia*, that because she claims that she was appointed counsel that did not perform to her liking, it was the "rule or policy" of the Chenengo County Family court to "impose upon indigent litigants assigned counsel who refuse to do their work properly and who are fired for cause." (Compl. at 12).

[6] The court would point out that state law also supports this application of judicial immunity. In *Swain v. New York*, 294 A.D.2d 956, 741 N.Y.S.2d 788, 789 (4th Dep't 2002), the Appellate Division held that the allegedly negligent acts of the court and its clerks in conjunction with the assignment of counsel who allegedly failed to perfect plaintiff's timely appeal were "cloaked with judicial immunity." (citations omitted), *leave to app. den.* 99 N.Y.2d 501, 752 N.Y.S.2d 588 (2002).

15

other types of representation. The statute provides that for "representation on an appeal, compensation and reimbursement shall be fixed by the appellate court." *Id.* § 722-b(3). While it is true that there is a "cap" on fees of $4,400.00, the statute provides that in extraordinary circumstances, the trial *or appellate court* may provide for compensation in excess of the limit and for payment of compensation and reimbursement before the completion of representation. *Id.*

The allegations in the complaint are unclear. Although plaintiff argues that the fee cap is unconstitutional, she seems to be aware that attorneys may request additional compensation. *See* Compl. ¶ 103 ("Upon information and belief, none of these attorneys applied for additional compensation . . . .") Plaintiff seems to argue that it was "unlikely" that her attorneys "read the entire record in a matter of days," and thus, they did not have enough time to work on her appeal. She states that "[m]erely to read 1,800 pages of the record requires 90 hours of work, and that does not include legal research, drafting or putting the record together, including tables of contents which is a job in itself." (Compl. ¶ 101). Plaintiff assumes that if it takes 90 hours of work, but an attorney can only devote approximately 62 hours of work prior to reaching the cap, her attorneys must not have had sufficient time to prepare a proper appeal because they never asked for additional compensation. She appears to blame the cap for this problem.

Plaintiff's allegations fail to state a constitutional claim. She is speculating that because her attorneys did not ask for more money (that she is aware of), they must not have spent enough time on her appeal and thus, plaintiff's access to courts, due

process, and equal protection rights were violated. There is absolutely no basis for this claim. She was not affected by the fee cap,[7] and in any event, neither of the defendants would have had any responsibility for the statute or for any attorney failing to ask for additional compensation.

### B. Hybrid Representation

#### 1. Legal Standard

As stated above, there is no constitutional right to "hybrid" representation. *Collins v. Beaver*, No. 03-CV-416, 2005 WL 1801603, at *11 (E.D.N.Y. July 27, 2005). This is true under either New York law or federal law. *Id.* (citing *People v. White*, 73 N.Y.2d 468, 479, *cert. denied*, 493 U.S. 859 (1989)). Even a criminal defendant has no right to file a pro se supplemental brief. *Id.* Although indigents have a right to appear pro se and a right to appointed counsel, those rights may not be exercised at the same time. *Id.* (citing *Ennis v. LeFevre*, 560 F.2d 1072, 1075 (2d Cir. 1977).

---

[7] The adequacy of fees for assigned counsel has been the topic of various suits in both state and federal court, most of which have been brought by assigned counsel, challenging either the hourly rate or the procedures by which attorneys are appointed in criminal cases. *See e.g. Bliven*, *supra*; *Zeigler v. New York*, No. 5:11-CV-37, 2013 WL 2461453 (N.D.N.Y. June 7, 2013) (assigned counsel attorneys and criminal defendants challenging the adequacy of assigned counsel compensation); *Campbell v. Poole*, No. 04-CV-6261, 2008 WL 2561998, at *2 (W.D.N.Y. June 26, 2008) (discussing alleged inadequacy of fees in relation to a petitioner's habeas corpus application based on ineffective counsel); *Levinson v. Lippman*, 4 N.Y.3d 280, 794 N.Y.S.2d 276, 827 N.E.2d 259 (2005) (attorneys challenged validity of court rule providing for administrative review of fee awards in excess of statutory limits - rule held valid); *New York County Lawyers Ass'n v. State*, 192 Misc. 2d 424, 745 N.Y.S.2d 376 (N.Y. Sup. Ct. 2002) (New York County attorneys challenging the caps on amounts payable to assigned counsel - granting preliminary injunction raising the rate paid to counsel, until the legislature modified N.Y. County Law § 722-b and N.Y. Judiciary Law § 35, raising the rates payable to assigned counsel).

### 2. Application

Plaintiff claims that the Family Court's "rule or policy" preventing "new pro se petitions by individuals represented by assigned counsel" is unconstitutional. Plaintiff appears to believe that the fact that plaintiff was filing multiple petitions claiming new instances of alleged abuse of the child, these constituted "new" petitions that she was entitled to file pro se, even though she was represented by counsel on the custody issue. Plaintiff was not entitled to do so, and she was not denied access to courts when the Family Court limited her filings to those made by her assigned attorney. No constitutional claim has been stated.

## VI. Amendment

A pro se litigant's complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991). In this case, plaintiff is suing two judges. Based upon the doctrines of abstention and of judicial immunity, plaintiff would be unable to amend the complaint to state a valid claim against either of these two judges. Thus, this court will recommend that, if this report is adopted, the court deny leave to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for IFP status (Dkt. No. 2) is **GRANTED ONLY FOR PURPOSES OF FILING THIS COMPLAINT**, and it is further

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM AND BASED ON**

**IMMUNITY**, pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii), and it is

**RECOMMENDED**, that if the court approves this recommendation, it further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and it is

**ORDERED**, that the Clerk serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Dated: June 26, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge